**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | |
|---|---|
| **RANDY GIPSON, CYNTHIA GIPSON, DANA PEPPERS, and WILLIAM BORDEN,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **NO. 1:24-cv-00103** |
| **MEDICAL MUTUAL OF OHIO, RESERVE NATIONAL INSURANCE COMPANY, KEMPER CORPORATION, and UNITED INSURANCE COMPANY OF AMERICA,** ) ) ) ) ) | **JUDGE CAMPBELL** **MAGISTRATE JUDGE HOLMES** |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants Medical Mutual of Ohio and Reserve National Insurance Company's Motion to Dismiss Plaintiffs' First Amended Complaint, (Doc. No 49), Plaintiffs' response in opposition (Doc. No. 57), and Defendants' reply (Doc. No. 66). For the reasons stated herein, the Motion to Dismiss is **DENIED**.

## I.     BACKGROUND[1]

Plaintiffs were enrolled in insurance plans issued by Defendant Reserve National Insurance Company ("Reserve National"). (¶ 31). The plan included a portability provision that allowed the insureds to port their coverage under certain circumstances so they could continue receiving benefits despite a change in employment or cancellation of the underlying group policy. (¶ 50). Plaintiffs had each secured continuing coverage through the portability provision and were receiving benefits for cancer treatment when, in December 2022, they were notified that their

---

[1]     Unless otherwise stated, citations in this section are to the Amended Complaint (Doc. No. 16).

"Cancer coverage has terminated effective 2.28.2023." (¶¶ 52, 63, and Exhibits C-E). The cancellation came shortly after Reserve National was acquired by Medical Mutual of Ohio ("Medical Mutual"). Plaintiffs allege that, "as part of the acquisition of Reserve National by Medical Mutual, the parent Defendants (Kemper [Corporation], United Insurance [Company of America], and Medical Mutual) collectively executed a plan to terminate substantially all of the ported group supplemental coverage Reserve National had in force on its books, in effect closing a book of business that was providing cancer and dread disease coverage to over 30,000 insureds." (¶ 67).

Plaintiffs contend Defendants breached their fiduciary obligations under ERISA by terminating coverage while Plaintiffs had ongoing claims. Plaintiffs initiated this lawsuit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), against the companies involved in the administration of their plans: Medical Mutual, Reserve National, Kemper Corporation, and United Insurance Company of America.[2] Plaintiffs seek declaratory relief and an affirmative injunction compelling reinstatement of the cancelled policies, and order establishing a constructive trust over the benefits due to Plaintiffs and directing Defendants to pay all benefits wrongfully withheld.

Two of the defendants, Reserve National and Medical Mutual, move for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. Nos. 48, 49).

---

[2] Reserve National was a subsidiary of Kemper Corporation and United Insurance Company of America until December 1, 2022, when Reserve National was acquired by Medical Mutual. (Doc. No. 16, ¶ 16).

## II. STANDARD OF REVIEW

**A.      Rule 12(b)(1)**

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (explaining that courts "are 'bound to consider [a] 12(b)(1) motion first, since [a] Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject matter jurisdiction" (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990))).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright*, 751 F.3d at 759. A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church*, 847 F.3d at 816–17 (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id*. at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). District

3

courts reviewing factual attacks have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.3d 320, 325 (6th Cir. 1990).

Here, Defendants argue the Court lacks jurisdiction under the ERISA statute because the benefits plans at issue are not ERISA-governed welfare benefit plans. This is a factual attack for which the Court can consider evidence related to the existence of jurisdiction. Both sides have submitted evidence related to the Court's subject matter jurisdiction. (*See* Doc. Nos. 50, 58, 59, 60, 61, 62, 63, 64, 65, 67).

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.  In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits

attached to a defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008). As mentioned above, the parties have each filed a number of exhibits, most of which are appropriately considered only with regard to the Court's subject matter jurisdiction under Rule 12(b)(1). Resolution of the instant motion to dismiss under Rule 12(b)(6) did not require reference to material outside the Complaint.

### III.    ANALYSIS

**A.    Subject Matter Jurisdiction**

Defendants argue the Amended Complaint should be dismissed because the insurance contracts that form the basis of Plaintiffs' claims are not governed by ERISA. Plaintiffs respond that irrespective of whether the insurance plans are ultimately found to qualify as ERISA plans, the Court has diversity jurisdiction given the makeup of the case and the case satisfies the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2), (d)(5)(B). The Court agrees.

Under Section 1332(d)(2), the Court has original jurisdiction for cases where the class exceeds 100 members, is minimally diverse, and has an amount in controversy exceeding $5,000,000. Here the parties are diverse as none of the Plaintiffs share a residence with any of the Defendants (Doc. No. 16 at ¶¶ 8-11, 16, 21, 26), Plaintiffs allege the persons who fall within the class "number in at least the hundreds," (*id.* at ¶ 82), and given that Plaintiffs seek reinstatement of their coverage, restitution of benefits, and attorneys' fees (*id.* at ¶¶ 71, 99, 107, and p. 23), the Court is satisfied that the amount in controversy likely exceeds $5,000,000.

Accordingly, at this juncture, the Court is satisfied that it has subject matter jurisdiction over Plaintiffs' claims. The motion to dismiss on this basis is **DENIED**.

**B.     Failure to State a Claim**[3]

1.   Equitable Relief

Defendants argue that even if ERISA applies, Plaintiffs fail to state a claim for relief under ERISA's equitable relief clause – Section 1132(a)(3) – because that clause only authorizes "other appropriate equitable relief" necessary to redress violations that ERISA does not adequately remedy elsewhere. (Doc. No. 49 at 15 (citing *Outward v. Eaton Corp. Disability Plan*, 808 F. App'x 296, 314 (6th Cir. 2020) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)))). Defendants argue that Plaintiffs' attempts to "repackage denial-of-benefit claims as claims for equitable relief" and should be rejected and the claims dismissed because Section 1132(a)(1)(B), which authorizes suits "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," provides an adequate remedy for denial-of-benefits claims.

The Supreme Court has stated that Section 1132(a)(3) is a "catchall" remedy that that acts "as a safety net" to provide "appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Outward v. Eaton Corp. Disability Plan*, 808 F. App'x 296, 314 (6th Cir. 2020) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). Defendants point to cases in which the court denied equitable relief under Section 1132(a)(3) for complaints concerning denial of benefits because appropriate remedies were available under Section 1132(a)(1)(B). (Doc. No. 49 at 16 (citing *Rochow v. Life Insurance Co. of North America*,

---

[3]     Although the parties devote much argument to whether the underlying group policies and ported coverage constitute an ERISA governed "employee welfare benefit plan," that issue is only raised in the context of Defendants' motion under Rule 12(b)(1). Defendants do not seek dismissal under Rule 12(b)(6) on that basis, likely because the determination requires a fact-specific inquiry. See *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996) ("The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person.").

6

780 F.3d 364, 373 (6th Cir. 2015) (concerning the arbitrary and capricious denial of a claim for benefits); *Outward*, 808 F. App'x at 315 (dismissing a claim for breach of fiduciary duty based on denial of a claim)).

But Plaintiffs claims are based on the alleged wrongful termination of coverage in violation of plan terms, not claim adjudication. The cases relied upon by Defendants concern the denial of claims for benefits under active policies, not the summary termination of a policy and the resulting denial of claims. Moreover, the Sixth Circuit has recognized that "where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits," a claim may be pursued under Section 1132(a)(3). *See Rochow*, 780 F.3d at 372 (italics in original). Here, Plaintiffs allege an injury beyond the mere non-payment of claims. They allege injury from the cancellation of their policies while undergoing approved treatment. While true that the policy cancellation ultimately resulted in the non-payment of claims, at this juncture, the Court is not persuaded that Section 1132(a)(1)(B) provides an adequate remedy for the injury alleged by Plaintiffs in this case. Accordingly, Defendants' motion to dismiss on this basis is **DENIED**.

Defendants next argue that Plaintiffs' claims for compensatory damages, restitution, and imposition of a constructive trust do not fall within the scope of "appropriate equitable relief" under Section 1132(a)(3), in part, because Plaintiffs do not seek restitution of "identifiable funds." Plaintiffs respond that Defendants ignore the allegations that Plaintiffs have approved cancer claims continued to submit charges for their respective continuing losses related to their diagnoses and that for the amount associated with these losses a constructive trust lies over the "identifiable funds" – *i.e.*, the benefits payments that accrued with each submission. (Doc. No. 57 at 22-23). Plaintiffs assert that those accrued amounts rightfully belong to Plaintiffs, not Defendants. Plaintiffs concede that to the extent they or other putative class members have not submitted

7

charges, no such constructive trust or restitution would occur. (*Id*. at 23, n. 7). At this juncture, the Court finds Plaintiffs have adequately alleged claims for equitable relief and that the relief sought may constitute appropriate equitable relief. Accordingly, the motion to dismiss on this basis is **DENIED**.

2.  Fiduciary Duty

Finally, Defendants argue Plaintiffs fail to state a claim for breach of fiduciary duty because they have not alleged a fiduciary act by Reserve National. (Doc. No. 49 at 19 (citing *DeLuca v. Blue Cross Blue Shield of Mich*., 628 F.3d 743, 747 (6th Cir. 2010)). Plaintiffs allege that Defendants terminated all of the ported group supplemental coverage as part of the acquisition of Reserve National by Medical Mutual. (Am. Compl., Doc. No. 16, ¶ 67). Defendants argue that Plaintiffs do not allege that the termination of coverage "constituted acts of management or administration with respect to their particular plans, 'as opposed to broader business decisions that simply affected' their alleged plans, along with many others." (Doc. No. 49 at 20 (citing *Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 322 (1st Cir. 2023)).

The fiduciary-duty provisions in ERISA apply only when an individual or entity is acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint. *DeLuca*, 628 F.3d at 746-47. ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The Sixth Circuit has recently emphasized that "an entity that exercises *any* authority or control over disposition of a plan's assets becomes a fiduciary as to those actions" and that "*discretionary* control or authority over plan assets is not required to give rise to ERISA fiduciary status." *Tiara Yachts, Inc. v. Blue Cross Blue Shield of Mich.*, 138 F.4th 457, 464 (6th Cir. 2025). (cleaned up, emphasis in original). The Court clarified that matters of contract may be actionable as a breach of fiduciary duty under ERISA, stating that "contractual duties and ERISA fiduciary status are not mutually exclusive" and "an administrator's performance (or nonperformance) of its contractual obligations can illuminate whether it was acting as an ERISA fiduciary." *Id.*

The question here is whether Defendants were acting as fiduciaries when they decided to terminate all ported group supplemental coverage. The cases relied upon by Defendants bear little factual resemblance to those alleged here. First, Defendants contend *DeLuca* stands for the proposition that no fiduciary duty is owed to Plaintiffs' plans with regard to "broader business decisions that simply affected" the plans. (Doc. No. 49 at 20). As an initial matter, it is important to note that *DeLuca* was decided at summary judgment stage after the facts had been developed during discovery. In that case, the defendant was Blue Cross Blue Shield of Michigan ("BCBSM"), a health care corporation that separately contracted with the plaintiff's employer to provide claims processing and other administrative services to the employer's self-insured benefit plan. The Sixth Circuit affirmed the district court's determination that BCBSM was not acting as an ERISA fiduciary for the employer's self-insured benefit plan when BCBSM negotiated hospital reimbursement rates in its secondary capacity as a distributor of health-care services "because those business dealings were not directly associated with the benefits plan at issue [] but were generally applicable to a broad range of health-care consumers." 628 F.3d at 746-47. Unlike in *DeLuca* where the conduct at issue was not directly related to the administration services provided

9

to the plan by BCBSM, here Defendants' decision to terminate all ported group supplemental coverage directly relates to Defendants' obligations vis-à-vis the terminated plans. The fact that the decision affected multiple plans and was for "business reasons" does not mean that it was not a fiduciary act – *i.e.*, an act affecting the management of the plan or disposition of plan assets.

In *Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Massachusetts*, the First Circuit affirmed dismissal of claims against a plan's third-party administrator under ERISA for paying amounts exceeding the negotiated rates after finding that the plaintiff failed to allege facts sufficient to show the third-party administrator was a fiduciary. 66 F.4th 307, 310 (1st Cir. 2023).

Recently, in *Tiara Yachts, Inc. v. Blue Cross Blue Shield of Michigan,* the Sixth Circuit considered claims similar to those raised in *Massachusetts Laborers'* and reached the opposite conclusion, reversing the district court's dismissal of a breach of fiduciary duty claim under ERISA. 138 F.4th 457. As in *Massachusetts Laborers,'* the *Tierra Yachts* plaintiffs alleged the defendant third-party administrator overpaid claims. *Id*. at 463. The Sixth Circuit distinguished *Massachusetts Laborers,'* noting that in that case, the third-party administrator lacked final authority to approve claims and was merely responsibly for writing the final check, the plan itself adjudicated claims and provided final approval, whereas in *Tierra Yachts*, the third-party administrator had the authority to grant or deny claims and then to pay the claims from plan assets. *Id.* at 466. Therefore, in *Tierra Yachts*, at the motion to dismiss stage, the Court concluded the plaintiffs showed the third-party administrator defendant had meaningful control over plan assets and thus acted as an ERISA fiduciary. *Id*.

None of these cases is particularly similar to the facts presented here, where Plaintiffs allege Defendants were acting in their capacity as fiduciaries when they summarily terminated all

10

ported group supplemental coverage. At this juncture, Plaintiffs have plausibly alleged that, as the issuer of the policies, Defendants' decision to terminate coverage was an exercise in control over plan management or plan assets, and thus Defendants were acting as an ERISA fiduciary.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Doc. No. 48) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

11